WILKINSON, Circuit Judge,
concurring:
The different sets of regulations at issue in this case obviously reflect a political back-and-forth between employers seeking to more easily hire foreign agricultural workers through the H-2A program and those representing domestic agricultural workers, whose wages and employment prospects could be adversely affected by guest workers from abroad. The 1987 regulations, 54 Fed.Reg. 28,037; 52 Fed. Reg. 20,496, embodied one set of priorities. *772 The 2008 regulations, 73 Fed.Reg. 77,110, embodied another and very different pro-employer set of priorities. The 2009 Suspension, 74 Fed.Reg. 25,972, and 2010 regulations, 75 Fed.Reg. 6884, then signaled a return, in the main, to the earlier 1987 emphasis on worker wage protection.
There is nothing necessarily wrong with this sort of seesaw. No one expects agency views to be frozen in time or to be immune from electoral mandates that will predictably result in alterations and modifications of agency rules and regulations.
Changes in course, however, cannot be solely a matter of political winds and currents. The Administrative Procedure Act requires that the pivot from one administration’s priorities to those of the next be accomplished with at least some fidelity to law and legal process. Otherwise, government becomes a matter of the whim and caprice of the bureaucracy, and regulated entities will have no assurance that business planning predicated on today’s rules will not be arbitrarily upset tomorrow. Thus, the APA contemplates what is essentially a hybrid of politics and law— change yes, but only with a measure of deliberation and, hopefully, some fair grounding in statutory text and evidence.
I readily concur in Judge Keenan’s fine opinion because it demonstrates, as did the district court’s decision, that the very rudiments of process were absent here. It quite defies belief that the 2009 Notice of Proposed Suspension of Rule deemed comments on the merits of the regulations to be suspended or the regulations to be reinstated out of bounds. See 74 Fed.Reg. 11,408. In other words, the very agency actions that would most affect those subject to the varying sets of regulations were ruled off limits to discussion.
This all risks giving the impression that the agency had already made up its mind and that the comment period was, at best, for show and provided only in an effort to do the minimum necessary to squeak by judicial review. The confusion was further compounded when the 2009 Notice invited comments on whether the Department should suspend the 2008 regulations, but then stated that comments concerning the “substance or merits” of those very same regulations “will not be considered.” Id. How in the world was a prospective commenter to know what could and could not be commented on, or what the agency would or would not deem worthy of its attention? The situation was further worsened by the highly abbreviated comment period allowed for what was, in reality, a complicated matter involving widespread real-world impacts on the different participants in the agricultural community and the difficulties and problems involved with the various regulations’ implementation.
It is not a matter of tying an agency’s hands in the face of a fresh electoral mandate. After all, the Department was able to achieve its objectives with the 2010 regulations. To have approved the process at issue in this case, however, would have been to generate a blueprint for agency unaccountability, at odds with the very idea that government at all levels is subject to the written law.